## McCAULEY v. NORTHERN TEXAS TRACTION CO. (No. 12183.)

Court of Civil Appeals of Texas. Fort Worth. July 20, 1929.

Rehearing Denied Sept. 28, 1929.

Davis G. Pugh and S. R. Graves, both of Fort Worth, for appellant.

Cantey, Hanger & McMahon, of Fort Worth, for appellee.

CONNER, C. J. This suit, in the nature of a bill of review, was filed by the appellant, J. F. McCauley, against the Northern Texas Traction Company on the 30th day of July, 1928, seeking to set aside a judgment of dismissal in a suit theretofore instituted in behalf of appellant on the 20th day of November, 1925, against appellee seeking to recover damages for injuries proximately caused in a collision with one of appellee's street cars on or about February 21, 1925.

Noting in reverse order the allegations of plaintiff's petition now under consideration, it is alleged that on February 21, 1925, while driving on a public street in Fort Worth, one of appellee's street cars was so operated as to collide with and against a wagon in which appellant was riding, with the result that the wagon was demolished and plaintiff seriously injured in the particulars set out in the petition. It was alleged that the injuries set forth were proximately caused by the negligence of the motorman of the street car in running at an excessive speed in violation of the city ordinance, in failing to keep a proper lookout and in failing to sound his gong or bell, or exercise due care to stop or so diminish the speed of his car as to avoid, with the means at his command, the collision, after discovering appellant's perilous position. Appellant's damages were laid in the sum of $40,000.

It is further alleged that thereafter appellant employed a firm of attorneys, naming the individuals of the firm, who, for a valuable consideration, obligated themselves to prosecute appellant's cause of action, and who, on or about November 20, 1925, instituted suit in appellant's behalf against the appellee company, which was styled J. F. McCauley v. Northern Texas Traction Company, No. 71601, pleading a meritorious cause of action, based on the facts resulting in his said injuries; that thereafter, on or about the 4th day of October, 1926, one of the attorneys, naming him, that had been so employed to prosecute appellant's suit, "for the sole, fraudulent and wicked purpose of protecting the defendant's legal interests and of damaging this plaintiff, caused or allowed plaintiff's said original cause of action number 71601 to be dismissed, without plaintiff's knowledge

or consent and contrary to his wishes and desires, and to plaintiff's great damage."

It is further alleged that: "In this connection, plaintiff alleged that he was not informed and did not learn that said cause of action had been dismissed until said judgment of dismissal had become final by operation of law, as hereinafter shown, and that his failure to learn of such dismissal was not due to any want of diligence on his part, as he was at all times from the date of filing of said suit until on or about the 19th day of November, 1926, long after such wrongful dismissal depending and relying upon the promises and assurances of his said attorney, * * * that his case was receiving the proper and necessary care and attention."

It was further alleged that his said attorney who caused the dismissal of his said suit "was prompted, induced and coerced to wrongfully dismiss or allow to be dismissed plaintiff's said cause of action without plaintiff's knowledge and contrary to his wishes and desires, and in violation of the duty he * * * owed plaintiff as his attorney, by the defendant's agents and attorneys, or both (whose exact names are unknown to plaintiff but are known to the defendant, its agents) threatening the said * * * with a criminal prosecution or disbarment proceeding or both in case he did not dismiss plaintiff's said cause of action, or cause or permit plaintiff's said cause of action to be dismissed as above alleged."

It was further alleged that:

"He did not learn that his said cause of action had been dismissed, or that his attorneys were not properly and diligently prosecuting his said cause of action until after November 5, 1926, and after said judgment of dismissal had become final by operation of law, but just as soon as he did learn that said cause of action had been dismissed and that the law firm of (naming them) were not any longer protecting his legal rights, though he at that and at all times since the 21st day of February, 1925, up to the filing of this suit, was mentally abnormal in that he suffered with an affection of a very low mentality which condition was augmented and aggravated by his great physical weakness and suffering caused and brought about by the injury he received by being struck by one of defendant's street cars which injury was the basis of the cause of action that was dismissed as above alleged and which will be hereinafter shown and set out; and though such low mentality augmented and aggravated by said injury almost rendered him mentally incapable of knowing the nature and consequences of his acts which rendered him incapable of protecting his legal and equitable rights in a court of justice, he did at once make a diligent effort to employ counsel to represent his legal rights in connection with his said cause of action; but lawyer after lawyer refused to take his case, many of them giving as an excuse that in order to have the case reinstated that it would be necessary to uncover and bring to light some very shady conduct on the part of attorneys who stood very high in the legal profession at Fort Worth and they would rather not become mixed up with such a nasty mess, all of which rendered it impossible for plaintiff to employ counsel to protect his rights until he explained his case to Davis G. Pugh, an attorney at the Fort Worth Bar.

"Plaintiff alleges that his said attorney, Davis G. Pugh, filed for him in the 96th District Court a suit in the nature of Bill of Review asking that said suit, the one dismissed, be reinstated and the cause tried upon the merits, on the 30th day of November, 1927; that said suit was called for trial and all parties announced ready on the 18th day of May, 1928, but during the trial of said cause plaintiff was surprised by his main witness testifying just opposite to what he had informed plaintiff and his attorney that he would testify to, which made it necessary for plaintiff to take a nonsuit and file this action. And in this connection plaintiff alleges that he has not been negligent or guilty of laches, that he has prosecuted his cause of action diligently, and he verily believes that upon a trial on the merits of the case there will be a different result reached from the dismissal of October 4, 1926, and the nonsuit taken May 18, 1928, that he pleaded a meritorious cause of action in his original suit and still has a meritorious cause of action which is as follows."

The petition here sets out the particulars of the street car collision which resulted in plaintiff's injury, which, however, for the purposes of our conclusion, we think have been already sufficiently indicated.

Appellee answered in the case now before us, among other things, by pleading a general demurrer, a general denial, and a plea in abatement, and the court, upon a hearing, sustained the general demurrer, on the ground "that the petition on its face shows laches," and, appellant having declined to amend, the cause was dismissed at appellant's costs, from which order appellant has duly prosecuted this appeal.

■ As stated, appellant's cause of action arising out of the wreck caused by the negligence of appellee's street car operator occurred on February 21, 1925, and it is apparent that the present proceeding is an effort to set aside the judgment entered on October 4, 1926, and reopen the case and proceed with the trial of appellant's suit as originally instituted so as to avoid the two-year statute of limitation pleaded by appellee. The judgment of October 4, 1926, was entered in one of the four district courts of Tarrant county, and hence became final 30 days after its entry by virtue of the Act of the Thirty-Eighth Legislature (1923) c. 105, § 1, subds. 15 and 16. See Phil H. Pierce Co. v. Watkins, 114 Tex. 153, 263 S. W. 905. The present petition discloses that during the 30 days succeeding the

entry of the judgment in question, no action was taken to set it aside. The present proceeding therefore is not the case of an ordinary motion for a new trial authorized by the statutes, during the term in which the judgment is entered. On the contrary, as stated in the beginning, the present suit is in the nature of a bill of review—an equitable remedy —an appeal to the equitable powers of the court to remove an obstacle to appellant's recovery. See Green v. Green (Tex. Com. App.) 288 S. W. 406; Squyres v. Rasmussen (Tex. Civ. App.) 296 S. W. 977; Porter v. Kruegel, 106 Tex. 29, 155 S. W. 174.

■ It is undoubtedly the policy of our courts that causes of action upon which suits have been instituted shall be prosecuted and disposed of with due diligence and dispatch. In the case of Johnson v. Templeton, 60 Tex. 238, it is said:

"This court has on more than one occasion laid down with considerable strictness the rules which should govern the action of the district court in cases where a new trial is sought after the expiration of the term.

"Where the final judgment of a court of competent jurisdiction has been once solemnly pronounced, it ought not to be lightly disturbed. It is alike the interest of individual suitors and of the public at large that there should be at some period an end put to litigation.

"For these, and many other good reasons, though the power of courts of equity to restrain final judgments and to entertain bills for new trial in such cases is well established, it never has at any time been regarded as a favorite one with chancellors.

"Such bills seeking relief from final judgments, solemnly rendered in the due and ordinary course of the administration of justice by courts of competent jurisdiction, are always watched by courts of equity with extreme jealousy, and the grounds upon which interference will be allowed are, confessedly, narrow and restricted.

"It will not be sufficient to show that injustice has been done by the judgment sought to be enjoined. It must further distinctly and clearly appear that this result was not caused by any inattention or negligence on the part of the person aggrieved, and he must, among other matters, show a clear case of diligence and of merit to obtain the interference of a court of equity in his behalf at such a stage of the case. High on Inj. (2d Ed.) secs. 112, 113; Duncan v. Lyon, 3 Johns, Ch. [N. Y.] 356 [8 Am. Dec. 513]; Brown v. Hurd, 56 Ill. 317."

In Green v. Green (Tex. Com. App.) 288 S. W. 406, it was held that a judgment of dismissal is as final for the purposes of appeal as is a judgment on the merits, and that, while the court is without power, unless authorized by statute, to grant the ordinary motion for new trial after the expiration of the new term, it may do so in an equitable

proceeding where the applicant presents the essential elements.

In Porter v. Kruegel, 106 Tex. 29, 155 S. W. 174, it was said by our Supreme Court, quoting from the headnote, that "the petition, in a proceeding to set aside a judgment dismissing a former suit for want of prosecution, must show that the petition in the former suit stated a cause of action; that the dismissal of such suit was not for petitioner's negligence; that he was reasonably diligent in seeking reinstatement during the term when it was dismissed; that, having duly filed a motion for reinstatement, he was not negligent in failing to have it acted upon at the same term; and must also show that a cause of action exists against defendant."

In Squyres v. Rasmussen, 296 S. W. 977, 978, by the Austin Court of Civil Appeals, it is said:

" 'Although the contrary might be inferred from some of the earlier decisions ([Gross v. McClaran] 8 Tex. 342; [San Antonio v. Lewis] 9 Tex. 69; [Goss v. McClaren] 17 Tex. 114 [67 Am. Dec. 646]), it must now be regarded as settled that a new trial is never in fact granted after the adjournment of the term of the court at which the judgment is rendered, no matter what are the grounds urged in support of the application (Taylor, Knapp & Co. v. Fore, 42 Tex. 256; Roller v. Wooldridge, 46 Tex. 485).' Overton v. Blum, 50 Tex. 417.

"The only relief in such case is by plenary suit in equity, wherein the plaintiff must show, first, a valid excuse for not appearing at the trial or moving for new trial during the term at which the judgment was rendered, and, second, a meritorious defense."

With the principles so clearly stated in mind, we will now scrutinize appellant's petition for the purpose of determining whether or not the trial court committed reversible error in sustaining appellee's general demurrer to the petition.

We think the petition sufficient in its showing of a meritorious cause of action against the appellee traction company, and in the showing of fraud on the part of appellant's counsel, induced, as alleged, by counsel for appellee, and further that the petition is not barred by the mere lapse of time, the four-year statute of limitation being applicable. Harrison v. Orr (Tex. Com. App.) 296 S. W. 871; Watson v. T. & P. Ry. Co. (Tex. Civ. App.) 73 S. W. 830; Automobile Finance Co. v. Bryan (Tex. Civ. App.) 3 S.W.(2d) 837.

It is to be observed, however, that the trial court did not sustain the demurrer on the ground that the facts alleged did not show a right of recovery on appellant's original cause of action, nor that the conduct of appellant's attorney, as alleged, did not amount to such fraud as is sufficient to authorize the setting aside of the judgment, or even that appellant's efforts to have the judgment of dismissal set aside were not made within the period of limitation. On the contrary, the sole

ground as stated in the judgment is that the petition showed on its face that appellant was guilty of laches.

■ Black's Law Dictionary (2d Ed.) p. 692, ·defines the term "laches" as: "Negligence, ·consisting in the omission of something which a party might do, and might reasonably be expected to do, towards the vindication or ·enforcement of his rights. The word is generally the synonym of 'remissness', 'dilatoriness', 'unreasonable or unexcused delay', the opposite of 'vigilance', and means a want of activity and diligence in making a claim or moving for the enforcement of a right (particularly in equity)· which will afford ground for presuming against it, or for refusing relief, where that is discretionary with the ·court. See Ring v. Lawless, 190 Ill. 520, 60 N. E. 881; Wissler v. Craig, 80 Va. 30; Morse v. Seibold, 147 Ill. 318, 35 N. E. 369; Babb v. Sullivan, 43 S. C. 436, 21 S. E. 277; Graff v. Portland, etc., Co., 12 Colo. App. 106, 54 P. 854; Coosaw Min. Co. v. Carolina Min. Co. (C. C.) 75 F. 868; Parker v. Bethel Hotel Co., 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706; Chase v. Chase, 20 R. I. 202, 37 A. 804; Hellams v. Prior, 64 S. C. 296, 42 S. E. 106; First Nat. Bank v. Nelson, 106 Ala. 535, 18 So. 154; Cole v. Ballard, 78 Va. 147; Selbag v. Abithol, 4 Maule & S. 462."

The trial court, we think, used the term "laches" in the sense given in the definition just quoted, and in so doing we do not feel able to say that he·erred. According to the allegations of the petition, appellant took no .action to have the judgment of October 4, 1926,. set aside during the term and during the time that he might have moved the court to set the judgment aside upon the showing ·of the alleged fraud. It is alleged that he did not "know" of the action of his counsel, but it is not alleged that he was not in attendance upon the court during the term or that the case was called out of its order, or that he was not put upon notice of the dismissal by a knowledge of such facts, which, if pursued with reasonable diligence, would have ·brought home to him full knowledge during the term of the action of the court.

In Levins v. Peeples Grocery Co., 38 S. W. 733, loc. cit. p.'740, col. 2, a Tennessee court of chancery said: "Knowledge and notice are not synonymous, although the effects produced by notice are the same, in many cases, as result from actual knowledge"—citing Le Neve v. Le Neve, 2 White & T. Lead. Cas. Eq. pt. 1, p. 109, and quoted with approval in 5 Words and Phrases, First Series, p. 3942, col. 1.

It is to be remembered that appellant under his allegations was evidently an essential witness in his case, and it was presumably his duty to be present unless misinformed as to its setting or otherwise unavoidably absent. In Schintz v. Hume (Tex. Civ. App.) 44 S. W. 680, it was held that a motion by the plaintiff to reinstate his case on the docket was properly denied, where the case was dismissed at the request of his attorneys, because of plaintiff's inexcusable neglect to attend the trial and testify. In Hall v. City of Austin, 31 Tex. Civ. App. 626, 73 S. W. 32, the plaintiff reached the courtroom about 10 o'clock. While waiting for her case to be called, she was compelled to go downstairs to attend an infant child, and, on returning, in 15 minutes, was told that the case had been called by the sheriff at the courthouse door. Plaintiff's at-torney reached his office at 9 o'clock, and 15 minutes before 10 started for the courthouse, and was detained at a bank on business "he could not neglect," and reached the courtroom some 25 minutes after 10, and was informed that plaintiff's case had been dismissed. It was held that the presumption against an abuse of the trial court's discretion was not overcome; the hour when court convened not appearing, nor that the case had not been called more than once, and the attorney's absence not being adequately excused.

■ It further appears from the allegations of the petition under consideration that appellant on the 30th day of November, 1927, over a year after the judgment of dismissal he now seeks to set aside, instituted in the Ninety-Sixth district court a suit in the nature of a bill of review, seeking to reinstate his original cause of action, and that on the 18th day of May, 1928, his cause was called and all parties announced ready, but that during the trial, and on the ground that plaintiff "was surprised by his main witness testifying just opposite to what he had informed plaintiff and his attorney that he would testify," plaintiff took a "nonsuit," and later filed, as stated, the present suit. It is to be noted that the petition fails to show what the testimony was that so surprised the plaintiff, and fails to negative the supposition that the same witness would be present on a trial of the present action, and, if permitted to testify, necessitate a nonsuit; nor is any explanation given as to why plaintiff did not at this time seek permission of the court to withdraw his announcement and continue the case, no reason being stated why the court would not have acted favorably on such an application; or, if appellant preferred to take a nonsuit, as he undoubtedly had the right to do, no reason is assigned as to why he might not have successfully at a later time during the same term of court moved to have set aside the judgment of dismissal of May 18, 1928. Appellant alleges that he was not negligent or guilty of laches in that connection, and that he has·prosecuted his cause of action diligently, but these statements are mere conclusions and cannot be accepted as statements of fact.

It is further alleged in the petition that plaintiff's injury affected his mind, because of which he was unable to properly attend

-to his business. It is not alleged, however, that his mind was so affected, as to totally incapacitate him, and it appears that after, as he alleges, he learned of the dismissal of his suit on the 4th day of October, 1926, he interviewed numerous attorneys and finally secured the services of an attorney in the prosecution of the present suit, thus manifesting, as may be assumed, a reasonable degree of intelligence. Moreover, it appears that, upon the hearing of the present proceeding, appellant was called as a witness and testified, and we cannot say that he manifested such a want of mental power as to require of us a reversal of the trial court's conclusion. It must be remembered, that courts of equity cannot exercise their power to care for and protect the slothful or those merely dull of apprehension. We think the allegations of appellant's mental condition insufficient to excuse or relieve him from the consequences of his want of diligence.

On the whole, we feel unable to say that the trial court abused his discretion in sustaining the general demurrer we have been considering. This conclusion renders it unnecessary to discuss appellee's cross-assignment, complaining of the court's action in not sustaining his plea in abatement.

For the reasons noted, the judgment is affirmed.